FRANK D. GIBSON v. IOWA CENTRAL RAILWAY COMPANY.[1]

July 7, 1911.

Nos. 17,058—(171).

**Railway — ice and snow — duty to servants.**

The general rule is that a railway company is not liable to its employees for injuries resulting from climatic conditions, such as snow and ice; but within its yard limits it must exercise a degree of care commensurate with the risks to prevent the accumulation of snow or ice in such quantity, form, and location as to be a menace to the safety of its employees working in its yards.

**Directed verdict — evidence.**

The defendant was not entitled to an instructed verdict. The evidence was sufficient to sustain the verdict for the plaintiff.

**Admission of evidence — new trial.**

The trial court did not err in its rulings as to the admission of evidence, nor in denying a motion for a new trial on the alleged ground of the misconduct of plaintiff's attorney.

Action in the district court for Freeborn county to recover $2,000 for personal injuries. Among other things the complaint alleged that,

[1] Reported in 131 N. W. 1057.

at the time of the accident and injury and ever since, the laws of Iowa provided as follows: "Every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of the agents or by any mismanagement of the engineers or other employees thereof, and in consequence of the wilful wrongs, whether of commission or omission of such agents, engineers or other employees, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." The answer alleged that plaintiff was guilty of contributory negligence; that, during all the time plaintiff had been in defendant's employ as a freight brakeman, he knew and was familiar with the duties of those engaged in that occupation; that his work took him almost daily to and through the yards of defendant at Northwood; that, for some time prior to the accident, he became familiar with and knew of the presence of snow and ice upon the tracks and yards of defendant at Northwood and the dangers and hazards incident to working in and about the tracks, and assumed such risks. The reply was a general denial.

The case was tried before Kingsley, J., and a jury which returned a verdict in favor of plaintiff for $1,200. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*W. H. Bremner, N. E. Peterson* and *Geo. W. Seevers,* for appellant.

*Dunn & Carlson,* for respondent.

START, C. J.

Personal injury action. Verdict for the plaintiff in the sum of $1,200, and defendant appealed from an order of the district court of the county of Freeborn denying its blended motion for judgment notwithstanding the verdict or for a new trial.

1. The first contention of the defendant is that upon the plaintiff's own evidence it was entitled to an instructed verdict in its favor, for the reason that his injury resulted from snow, the hazard of which he

assumed as one of the risks of his employment. The law relevant to this question is well settled. The general rule is that a railway company is not liable to its employees for injuries resulting from climatic conditions, such as ice and snow; but within its yard limits it must exercise a degree of care commensurate with the risks to prevent the accumulation of snow and ice in such quantity, form, and location as to be a menace to the safety of its employees working in its yards. Lawson v. Truesdale, 60 Minn. 410, 62 N. W. 546; Fay v. Chicago, St. P. M. & O. Ry. Co. 72 Minn. 192, 75 N. W. 15; Rifley v. Minneapolis & St. Louis R. Co. 72 Minn. 469, 75 N. W. 704.

The gist of this action is the alleged negligence of the defendant in failing to keep its yards free from a snowbank which caused the plaintiff's injury. The jury, under the charge of the court, necessarily found that the defendant was thus negligent. If, then, there was any evidence tending to establish such negligence, the defendant's motion for a directed verdict was correctly denied. There was evidence, taking the most favorable view of it permissible for plaintiff, fairly tending to show the evidentiary facts following:

Plaintiff, an experienced railroad man, was head brakeman on a local freight running on defendant's line from Mason City to Albert Lea. He was injured in defendant's yards January 31, 1910, at Northwood, Iowa, about 8:30 o'clock in the evening on a dark night, when the trainmen were working with lanterns. The yards consisted of a main line and some side tracks. His train came in from the south, and passed to the north end of the yards on a side track, where the engine and two cars were cut from the main train for switching purposes. The engine and two cars cleared the switch at the north end, backed down on the elevator track, picked up several cars, and pulled them back over the north switch. The operation was then to "kick" some of the cars down on the main line and others back on the elevator track. Owing to a curve in the track, it was necessary for him to work on the left side of the train and give his signals to the fireman. He cut off two cars, but when he undertook to cut off the third one, which was to go down the main line, the lift lever refused to work. He then got upon the side of the car with his foot in the stirrup, and hung on the side of the car with one hand while he endeav-

ored to work the lifting lever with the other. This was the usual and proper position to take, and was the customary way to ride on the side of the car when it was to be cut off. While in this position he was knocked off the side of the car by a hard bank of snow on the main line, three and one-half to four feet in height, and high enough and near enough to hit plaintiff when on the side of the car. He fell under the train with his legs across the track; but the brake beam knocked his legs off the track, and he was doubled up with his head and knees together, and shoved into the snowbank by the moving car. This snowbank had been shoveled out around the switch and for a distance of twenty-five or thirty feet south of the switch; but it had not been shoveled out at the point where plaintiff was knocked from the car. This snowbank was hard and solid and did not appear to be fresh snow. It was dark-colored and had ice in it. The general rule was to have snowbanks shoveled away, so that the men could work about the cars and not be knocked off. Plaintiff had never been instructed or warned as to the presence of this snowbank, and did not know it was there prior to his injury. The switching operations required his constant attention and watchfulness in order to properly perform his work. It was not storming or drifting at the time of the accident. The snow drifted during the afternoon, but to what extent the record does not disclose.

These evidentiary facts, if satisfactory to the jury, were sufficient to justify a finding by them of the ultimate fact that the defendant was guilty of negligence as alleged. If the snowbank was of the size and character and in the location which the plaintiff's evidence tended to show, the inference is quite conclusive that it had been there a sufficient length of time to have enabled the defendant, in the exercise of due care in keeping the place where it required its employees to work in a reasonably safe condition, to have discovered the bank and removed it before the accident. The defendant was not entitled to a directed verdict; on the contrary, the verdict returned is fairly sustained by the evidence.

2. The plaintiff as a witness in his own behalf was asked this question: "And I will ask the question again—if I didn't— when you were knocked off this car in the position you were in, state whether

or not it was the usual and customary position to take to do that work. (Objected to as incompetent, irrelevant, and immaterial. Objection overruled.) A. It was." This ruling is assigned and relied upon as reversible error, for which a new trial must be granted, for the alleged reason that the question called for an opinion as to an ultimate fact which the jury must determine.

The question in legal effect called for an opinion whether the position was a proper one; for if it was the usual and customary one in such cases it was prima facie the proper one. It is to be noted that the plaintiff had already stated the position he was in when he was knocked from the car; that the objection did not go to the competency of the witness to give opinion evidence as to whether it was the proper position to take. Besides he was an experienced brakeman and prima facie competent. It is quite clear that the question was a proper one, as calling for opinion evidence as to a matter not of such common knowledge that the jury would be likely to understand without the assistance of such evidence. The mere fact that the question related to an issue that the jury were to pass upon was no reason for excluding it. Anderson v. Fielding, 92 Minn. 42, 99 N. W. 357, 104 Am. St. 665. In no event could the evidence have been prejudicial to the defendant, for the witness had already testified to the same effect without objection.

3. Counsel for the plaintiff in his argument to the jury used this language: "Oh, the penuriousness of a railroad company, going and sending a man into a death trap of that kind by their own negligence, conditions that they could avoid, just for a few pennies, and render the condition safe for their men. No, it costs too much; it costs too much to shovel out that snowbank; it is cheaper to expose the lives and bodies of their employees to the dangers of being mangled and torn and injured and killed; it is cheaper to have a foot lost or a leg lost."

By the Court: "I think, Mr. Carlson, this line of argument you are indulging in now, you had better refrain."

Mr. Carlson: "On the suggestion of the court, it seems to me that I will refrain, your honor."

This is assigned and urged as reversible error. The statement was

improper. The advice of the court was promptly accepted by counsel. Counsel for the defendant, however, made no objection to the remarks, nor took any exception thereto at the time, nor called upon the court to make any ruling or give any instructions in reference to the remarks. The first objection made to the remarks of counsel was on the motion for a new trial. We hold that the trial court did not abuse its discretion in not granting a new trial on this ground.

Counsel for plaintiff further said to the jury: "I think the inference was drawn out here that some time after at least that the man went to find employment of some kind, that he went to work in a saloon. Well, it was the negligence of the Iowa Central Railway Company that made it necessary for him to do that, gentlemen. Mr. Peterson: If the court please, I think that remark is improper. I don't think the railroad company had anything to do with his working in a saloon, and I object to that statement. By the Court: The objection may be entered." This was also made a basis for a new trial. It appears from the evidence that the defendant called out on plaintiff's cross-examination the fact that after his injury he obtained employment handling baggage, but could not stand the work, and that he then sought and secured employment in a saloon. It is quite apparent from the remarks objected to that they were directed to this evidence, and to unfavorable inferences drawn therefrom by the defendant's counsel. If this be correct, the remarks complained of were justifiable retaliation. It is true that no part of the remarks of defendant's counsel to the jury are in the record; but the burden is on it to show error, if any there were. On the record, we hold that the remarks do not constitute misconduct on the part of counsel.

Order affirmed.