WILLIAM CREGG v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

*Master and servant—Railroad companies—Dangerous premises.*

A risk made hazardous by the act of the employer cannot be said to be one which he, by the exercise of reasonable care and diligence, could not reasonably have become aware of and provided against, nor is it one which the employé assumed when he embarked in the service as incident thereto, nor is it one equally apparent to the observation of both employer and employé, nor is it one the mere failure to observe which by the employé is chargeable as contributory negligence.

Error to Muskegon. (Dickerman, J.) Argued April 15, 1892. Decided May 13, 1892.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant, contended:

1. The plaintiff is shown to have entered upon an employment which is from its nature necessarily hazardous. He assumes such risks and perils of the service as require only the exercise of ordinary observation to make them apparent. His implied contract and waiver include, on the one hand, all such risks and dangers as the employer, by the exercise of reasonable care and diligence, could not reasonably have become aware of and provided against; and, on the other, such as the employé, from the nature of the business as usually and ordinarily conducted, must have known, when he embarked in the service, were incident thereto, as also those which the exercise of his opportunities for inspection, while giving diligent attention to such service, would have disclosed to him. Hence, when the defect or injurious condition is equally known to, or alike apparent to the observation of, both employer and employé, both are upon common ground, and the employer is not responsible for the resulting injury; citing *Hewitt v. Railroad Co.,* 67 Mich. 61; *Railway Co. v. Frawley,* 110 Ind. 18; *Illick v. Railroad Co.,* 67 Mich. 638; *Piquegno v. Railway*

*Co.*, 52 Id. 40; *Miller v. Railway Co.*, 90 Id. 230; *Batterson v. Railway Co.*, 53 Id. 125; *Brewer v. Railway Co.*, 56 Id. 620; *Cook v. Johnston*, 58 Id. 437; *Goulin v. Bridge Co.*, 64 Id. 190; *Karrer v. Railway Co.*, 76 Id. 400; *Grand v. Railroad Co.*, 83 Id. 564.

*Jones & Clark* (*N. J. Brown*, of counsel), for plaintiff, contended:

1. A party entering upon a particular employment assumes the risks and perils usual thereto, where the usual and customary means are adopted to guard against accident. If wanting in either respect, there is an increased risk, and, if the servant is injured in consequence thereof, the master must be held responsible therefor; citing *Swoboda v. Ward*, 40 Mich. 423; *Benzing v. Steinway*, 101 N. Y. 547; *Gibson v. Railroad Co.*, 46 Mo. 163.

2. The general duty of a master to exercise care to prevent the exposure of his servant to unnecessary and unreasonable risks requires him, among other things, to use reasonable diligence in seeing that the place where the service is to be performed is safe for that purpose; citing *Cook v. Railway Co.*, 34 Minn. 45, and cases cited.

McGRATH, J. Plaintiff, a brakeman upon a freight train in defendant's employ, was injured in February, 1888, while attempting to couple to a car upon a siding at a way station. The side track was from 400 to 600 feet long, and ran north, parallel with the main track. On the east side of the spur were perpendicular banks and coal docks, just far enough from the track to allow the cars to pass. The distance between the main track and the siding at the point of the injury was about seven feet. There had been considerable snow during the winter, and the snow-plows had thrown it from the main track into this space, and, inasmuch as it could not be thrown to the east, it was shoveled into this space from the siding, forming a ridge between the main and side tracks from two and a half to four feet high. This ridge of snow had packed and had become hard, and the angle

from the west track of the siding to the top of the ridge was from 40 to 45 deg. No space had been cleared at the point of the injury, but the ascent began at the rail.

For about one-third of the distance north of the switch, the snow between the main and side tracks had been cleared away to a level with the tracks. Plaintiff had cut off the engine and two cars, rode them to the switch, switched the engine and two cars upon the side track, and preceded the moving section of the train to make the coupling to a car that stood within the space that had been cleared of the snow. The last car upon the moving section of the train was loaded with logs, which projected over the rear of the car, rendering the act of coupling difficult and dangerous. The draw-bar upon this car was also defective. Plaintiff describes it as follows:

"I think it was a skeleton draw-bar,—what they call a skeleton draw-bar. I think it was cast iron or wrought iron; I don't know which it was; and it was hollow. The spring that was in back to hold it out to its place, or the plug, it seems, had worked out of there, or broke or taken out, so that nothing held it from pushing clear in at the side, except the pin for the coupling there, and that had pushed into the wood, so that it wore a hole in there as big as the pin was. It was worn bad. The bolts that went up through it to hold it were worn so it dropped down four inches lower than the draw-bars on the other cars."

This defect increased the danger and difficulty of making the coupling. The first attempt to couple failed, as did the second. In the attempts at coupling, the car which they were seeking to attach was driven north upon the side track, and opposite the snow bank. By reason of the projecting logs, plaintiff was compelled to work and keep in a stooping position, and upon the failure of the second attempt, fearing injury if he

remained in his position, he undertook to back out from between the cars, and, stepping upon the side of the snow bank, his foot slipped, and he was thrown back between the cars, and seriously injured.

Defendant offered no testimony, and the plaintiff had a verdict and judgment. Defendant submitted but one request, to wit, that defendant was entitled to a verdict.

Counsel contend here that plaintiff had uncoupled the car loaded with logs from the other section of the train; that plaintiff knew of the defective condition of the draw-bar; that after the first attempt he then knew its condition, and neglected to get another longer link; that plaintiff had uncoupled the engine and two cars upon the main track north of the switch, had an opportunity to observe the snow bank, and knew, or ought to have observed, the condition of the snow upon the side track.

It is not clear that the mere drawing of a coupling pin, after the proper slack had been given, would apprise the plaintiff of the condition of the draw-bar. But, admitting that plaintiff knew of its defective condition, there is no testimony tending to show that he did not act in view of the increased danger.

One of the counts in the declaration sets up the condition of the draw-bar, and the condition of the logs upon the car, in explanation of the failure to couple, the ultimate position of the car, and plaintiff's situation. The negligence counted upon in this count, and upon which the case was submitted, was the condition of the side track. The proofs established these allegations, and no objection was made to their introduction. The evidence did not tend to show any negligence on plaintiff's part respecting the coupling of the cars. He explains why the attempts failed, and he is not contradicted. Respecting the snow between the tracks, plaintiff testified that he was not aware of its condition. It had been

accumulating for weeks. There had been quite a fall within a few days. The defect in this side track was not one of construction, nor did it result from the lay of the land, nor from irregularity in the surface of the ground, nor from want of ballast. It was not an ordinary defect, nor one incident to construction. The irregularity in the surface was one arising from negligent operation. It was a condition brought about by the practice in cleaning snow from the tracks. The ridge had been made by the defendant itself, without reference to the fact that brakemen were necessarily in upon the tracks between moving cars, and could only get from that position by stepping out into this space. In the use of this side track, which was frequent, it was the duty of brakemen to go upon it for this very purpose. On the east there was no opportunity for escape, and, by the act of defendant, escape on the west was made extremely hazardous.

A risk made hazardous by the act of the company itself cannot be said to be one which the employer, by the exercise of reasonable care and diligence, could not reasonably have become aware of and provided against, nor is it one which the employé assumed •when he embarked in the service as incident thereto, nor can it be said to be one equally apparent to the observation of both employer and employé, nor is it one the mere failure to observe which is chargeable as contributory negligence.

The judgment is affirmed, with costs to plaintiff.

MORSE, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.