F. SANKEY, Appellee, v. THE CHICAGO, ROCK ISLAND AND
PACIFIC RAILWAY COMPANY, Appellant.

| | |
|---|---|
| 118 | 39 |
| d121 | 133 |
| 118 | 39 |
| 124 | |
| 124 | 39 |
| 124 | 475 |

Personal Injury: RAILROADS: REASONABLE CARE. It is the duty
1  of a railroad company to use reasonable care in keeping its
switch yard and tracks free from an unusual accumulation of
ice, thereby rendering the duties of a brakeman specially haz-
ardous, and the question of the negligence of the company in
this respect is for the jury.

| | |
|---|---|
| 118 | 39 |
| 127 | 731 |
| 118 | 39 |
| 131 | 77 |
| 131 | 735 |
| 131 | 736 |
| 118 | 39 |
| f132 | 732 |

Same: ASSUMPTION OF RISK: INSTRUCTIONS: ERROR. Where the
2  issues present the question of the assumption of the risk by
plaintiff in remaining in the employ of the company, with
knowledge or means of knowledge of the conditions of which
he complains, failure of the court to instruct the jury in the
law relating to the assumption of risk is reversible error.

| | |
|---|---|
| 118 | 39 |
| 138 | 182 |
| 138 | 184 |
| 118 | 39 |
| 140 | 37 |

Special Finding: EVIDENCE TO SUPPORT. Evidence considered and
3  found sufficient to sustain a special finding that plaintiff slip-
ped upon ice inside the rail.

*Appeal from Pottawattamie District Court.*—HON. W. R.
GREEN, Judge.

MONDAY, OCTOBER 13, 1902.

ACTION at law for damages on account of personal in-
juries occasioned by the alleged negligence of the defend-
ant. Verdict and judgment for plaintiff, and defendant
appeals.—*Reversed.*

*Carroll Wright, John I. Dille* and *A. L. Preston*
for appellant

*Thomas A. Cheshire* for appellee.

WEAVER, J.—Plaintiff was in the employ of defendant
as head brakeman on a freight train. On the morning of
January 6, 1899, the train pulled in upon the side track of.
the defendant's railroad at the station of Earlham, and

plaintiff, in the performance of his duty, undertook to couple the engine to certain cars standing upon such track. In so doing he stepped in front of the moving cars and slipped, as it is claimed, upon a ridge of ice which had formed or accumulated inside of the rail, causing him to fall, and resulting in his feet being crushed beneath the wheels, whereby he was seriously and permanently crippled. This accident, he alleges, was caused by the negligence of the defendant in so grading and maintaining its yards at Earlham that water would settle and freeze at the point where plaintiff's foot slipped, and where brakemen were required to walk in the performance of their duties, and in permitting the ice to remain thereon and become rough and uneven of surface, thus rendering the yard at that point slippery and dangerous to walk over. The defendant denies plaintiff's claim, and further alleges that the plaintiff had been in its employ for several years, and was well acquainted with the condition of the road and tracks with respect to snow and ice; that the condition of the yard and tracks at Earlham at the time of the accident was the same as at other yards generally upon the road where plaintiff worked, and with which he was familiar; that he knew, or with the exercise of reasonable care ought to have known, that ice and snow did at times accumulate thereon, and that, by remaining in the company's employment with such knowledge and means of knowledge concerning the alleged danger, he assumed the risk of all such perils, and waived any right of recovery which he otherwise might have had. Many errors are assigned, but the argument of appellant is confined to a few propositions, which we will briefly consider:

1. It is first urged that defendant cannot be held negligent because of the presence or accumulation of ice and snow upon its tracks and yards. Within 1. RAILROADS: reasonable care. certain limitations, this is the correct doctrine. Climatic conditions—heat, cold, rain, snow,

and ice—are beyond the control of the employer, and the mere fact of their existence or occurrence does not tend to negative the exercise of reasonable care. But it does not follow that a case cannot arise where the presence or existence of some of these elements is so combined with want of reasonable care by a railroad company in the maintenance of its tracks and yards as to create a danger which is not naturally or necessarily incident to a brakeman's labor. The work of coupling and uncoupling cars, making up, trains, taking and discharging freight, opening and closing switches, is done almost exclusively within the yard limits of the stations along the line of road, and, within reasonable limits, the obligation of the master to furnish his servant a safe place in which to work applies to these yards as imperatively as to the repair shops or to the general offices of the company. .Reasonable safety, however, does not necessarily mean the absence of danger; for, paradoxical as it may seem, a place of great danger may be "safe," within the terms of the law, if reasonable care has been used to guard against so much of the peril as ordinary prudence would anticipate, and ordinary effort avoid. As we have said, the mere falling of snow or formation of ice is not in itself evidence of negligence on part of the company; but if by reason of the structures or improvements placed upon the yards, or by reason of the method for caring for or maintaining such yard or by reason of public travel across the same, such snow or ice accumulates in heaps or ridges in places where brakemen are required to go in performing the work required of them, thereby exposing them to danger of slipping beneath the wheels of moving cars, and such obstructions are allowed to remain an unreasonable length of time without effort to remove them, it cannot then be said, as a matter of law, that such company is not negligent. In the case at bar, while the testimony was conflicting, there was sufficient to justify the jury in finding that plaintiff's injury was occasioned

by his foot slipping upon ice as he was in the act of coupling cars; that this ice had formed several weeks before the accident; and that by reason of public travel, or by reason of the shade of the rail retarding the thawing process at that point, it had assumed the form of an uneven ridge just inside of the south rail, and sloping towards the center of the track. The height of this ridge is variously stated by witnesses as being from two inches to the full height of the rail. Other patches of ice are shown near the same point, but outside of the track; and the evidence, while not entirely clear as to the identical spot upon which plaintiff slipped, is sufficient to sustain the finding of the jury in this respect. There is evidence, also, that it was the custom of the defendant to clear its tracks in station grounds, to some extent, of snow and ice, but this labor, it would seem, was generally confined to "flanging;" that is, to the removal of snow and ice to the width of an ordinary shovel blade just inside of each rail,—a process which the jury might have found would have prevented or removed a ridge of ice of the dimensions and location described by several witnesses. In view of these facts, we think the trial court was right in submitting the question of negligence to the jury. Cities and towns are charged with the duty of providing safe streets and walks for the use of the public. The responsibility of public corporations is in this respect no greater in degree than that which rests upon railroad companies to provide their employes a safe place in which to perform the work required of them. The measure of the duty in each instance is reasonable diligence and care. This is not to be understood as holding the railroad company to the performance of the same acts as may be required of the city or town, but simply that each must exercise the degree of care and caution which reasonable prudence indicates to be necessary in view of the circumstances of the particular case. We have held municipal corporations chargeable with neg-

ligence in permitting the accumulation of snow and ice in
uneven and irregular masses upon the streets.    *Collins v.
City of Council Bluffs*, 32 Iowa, 324; *Hodges v. City of
Waterloo*, 109 Iowa, 444.   See, also, *Huston v. City of
Council Bluffs*, 101 Iowa, 33, and the authorities there
cited.   The suggestion of counsel that a city is bound to
remove snow and ice from its sidewalks, and therefore
these authorities are not in point, we think incorrect.   It
is not correct that cities are "bound to remove snow and
ice from their sidewalks."   No such duty exists while
the snow and ice remain unchanged by the interference of
man or other artificial cause.   That duty arises only when
by reason of such interference with natural conditions
the snow or ice becomes ridged or rounded or uneven, or
is made to assume some other form or present some other
danger than would result solely from natural causes.
*Huston v. City of Council Bluffs*, 101 Iowa, 36; *Broburg
v. City of Des Moines*, 63 Iowa, 523.   That the general
principle controlling the cases referred to may, under
proper circumstances, be applicable to railway companies,
in respect to their care for yards and tracks where train-
men are expected to work, has repeatedly been held; and
no court, so far as we have been able to discover, has held
to the contrary.   *Lawson v. Truesdale* (Minn.) 62 N. W.
Rep. 546; *Rifley v. Railroad Co.* (Minn.) 75 N. W. Rep.
704; *Cregg v. Railway Co.* (Mich.) 52 N. W. Rep. 63.
The *Rifley Case* is directly in point both in its facts and
the legal questions involved.   It is there held that a rail-
way company is under obligation to keep its yard in rea-
sonably safe condition for employes who are required to
work therein.   The Minnesota court having held in earlier
cases that, except under peculiar circumstances, a railway
company was not chargeable with negligence on account
of the filling of cattle guards with snow, it was urged by
the defendant in the *Lawson Case* that the same rule was
applicable to the care to be exercised over the yards where

trainmen and switchmen perform their labors; but the court says that in the cases relied upon in support of such proposition "there is not a word in either case which can be construed as an intimation that, as a matter of law, a railway employe, when entering service in this climate, assumes all risks which attend the falling of snow or the forming of ice upon or about the tracks and yards, or the removal of the same by the railway companies. Nor have we seen any case in any court laying down that doctrine." In *Fay v. Railroad Co.* (Minn.) 75 N. W. Rep. 15, cited by appellant, the plaintiff, under the facts shown, was held not entitled to damages; but the rule by which the company may be held negligent in permitting snow and ice to accumulate in dangerous forms and quantities upon its yards and tracks is distinctly recognized. As we have already suggested, this liability is founded in the familiar rule which required the employer to provide a reasonably safe place to work. The employer cannot remove, and therefore is not liable for, the risks which are attendant upon the operation of natural causes alone; but, when it establishes a yard and side tracks upon which its trainmen are expected to go by day or night to perform a hazardous service with a promptness and speed which ordinarily precludes minute inspection of their pathway, it is but just and right to say that the company shall be held to the exercise of reasonable care in keeping such places free from dangers which ordinary prudence and exertion would eliminate. *Railroad Co. v. O'Brien,* 161 U. S. 451 (16 Sup. Ct. 618, 40 L. Ed. 766); *Kroener v. Railway Co.,* 88 Iowa, 16. We think, therefore, there was no error in the ruling of the trial court holding that the question of defendant's negligence was for the jury.

II. By its answer, as we have before stated, defendant alleged, in substance, that the condition of the yard at Earlham in respect to ice and snow was the same as prevailed generally in the yards of the company where plain-

tiff performed his work; that such condition was open, no-
torious, and well known to the plaintiff, or,
with the exercise of ordinary care, ought to
have been well known to him; and that, by re-

2. Assumption
of risk: in-
structions:
error.

maining in defendant's service with such knowledge and
means of knowledge, he assumed the risk arising from
such conditions.   In stating the issues to the jury the trial
court called attention to the issue thus presented, but
failed to give any instruction as to the law applicable
thereto.   The substance of the charge given to the jury
was that if plaintiff had established the alleged negligence
of the railroad company, the injury to himself by reason
thereof, and his freedom from contributory negligence, he
was entitled to recover damages.   This was a correct prop-
osition, so far as the issue presented by defendant's denial
is concerned, but in ignoring the plea of assumption of
risk we think there was error.   This point is distinctly
ruled in *Quinn v. Railway Co.*, 107 Iowa, 710.   The de-
fense being distinctly pleaded, and there being evidence
tending to support it, the jury should have been given
specific direction in reference thereto.   If it be true, as
alleged, that the condition of the yard at Earlham was the
same as universally prevailed in all the yards along the
line, that plaintiff had been for years in the same service,
and that he knew, or, as a reasonable man, ought to have
known, that defendant was making no effort to prevent
or remove obstructions of the kind complained of, then by
remaining in such service with such knowledge and means
of knowledge he assumed the risk of all the injuries result-
ing to him by reason of such want of care on defendant's
part.   The trial court did charge the jury as to the plain-
tiff's assumption of all risks which are naturally or neces-
sarily incident to the service in which he was engaged, and
as to the bearing of his knowledge of the custom and
practice of the company upon the question of contributory
negligence, but this, we think, does not obviate the objec-

tion raised by appellant. The assumption of risk by virtue of his employment is a matter which inheres in plaintiff's case, and the question is sufficiently raised by the defendant's denial of negligence; but assumption of the risk arising from defendant's negligence, if negligence be established, can only be raised by an affirmative plea, and defendant assumes the burden of its proof. It is entirely possible for the jury, in a proper case, to find the defendant chargeable with negligence, and the plaintiff to be free from contributory negligence, and yet to find that, by remaining in the service with knowledge or means of knowledge of the conditions of which he complains, the plaintiff has waived his right of action. It is this latter principle which the charge of the court overlooked.

The jury, in response to a question submitted, found specially that plaintiff slipped upon ice inside of the rail. It is strongly urged that this is without support in the evidence. As we have already stated, the 3. SPECIAL finding: evidence in support of. testimony in this respect is not clear. Plaintiff in one portion of his testimony states it to be his impression that he was outside of the rail, but has not distinct recollection. Again he says that he might have been between the rails, for all that he knows. He says that he was in the act of making the coupling, and, while he would lift the pin without stepping over the rail, yet it was necessary also to pull open the "knuckle," which was a movement requiring him to go in between the cars. The unexpected and sudden character of the accident, the quick sequence between the fall and injury, and the pain and excitement accompanying it, sufficiently account for his inability to speak with certainty as to his precise position; but the fact that he did slip and fall; that such fall left him with his feet within the rail; that there was a ridge of ice immediately inside of the rail, sloping in the direction his feet appear to have slipped; and that the patches of ice outside of the rail appear to have been

somewhat further away, —are circumstances which fairly tend to sustain the jury's finding.

For the error indicated in the second paragraph of this opinion, there should be a new trial, and the judgment below should be REVERSED.